# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DEMETRIUS PURVIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CV416-015 |
| LATRICIA DUKES & MAURIO SINKFORD, | ) ) ) ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

Defendants move to dismiss plaintiff Christopher Purvis' 42 U.S.C. § 1983 Complaint. Doc. 11. No opposition has been filed.

## I. BACKGROUND

Plaintiff was incarcerated at Coastal State Prison (CSP) at the time of the incident alleged in the Complaint. Doc. 1 at 4. He alleges that, on some unspecified date, he was ordered to remove items from his pockets by Officer Latricia Dukes. As he proceeded to do so, Officer Dukes "started scratching [his] nose and face saying 'I'm tired of ya'll dumb asses.'" *Id.* at 5. He attempted to "fight her off," but was placed in handcuffs, swarmed by several other officers, and "kick[ed], punch[ed], and tortured" by the officers. *Id.* Deputy Warden Mario

Sinkford apparently watched the incident unfold, and sent Purvis to "high-max" to "cover-up" the beating. *Id.*

While segregated in "high-max," Purvis repeatedly asked his guard for a grievance form to file a complaint, but never received one. *Id.* at 3. Conversely, he also contends he "never got a response" to his appealed grievance, as "the appeal is active at the Commissioner's office." *Id.* at 4. He seeks $8,000 in damages for his pain and suffering, and alleges defendants' actions violated the Eighth Amendment prohibition against the use of excessive force and cruel and unusual punishment. *Id.* at 6. Pursuant to the Court's 28 U.S.C. § 1915A screening, the action proceeds on one excessive force claim against Officer Dukes and one failure to protect claim against Deputy Warden Sinkford. Doc. 9 at 3-4.

B. ANALYSIS

Defendants argue that dismissal is appropriate because plaintiff has failed to exhaust his Prison Litigation Reform Act (PLRA) administrative remedies. Plaintiff does not oppose their argument.

Under the PLRA exhaustion provision, a prisoner must exhaust all available administrative remedies *before* filing an action that

2

challenges the conditions of his confinement. *See* 42 U.S.C. § 1997e(a). Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999), *aff'd in part and vacated and remanded on other grounds by Harris v. Garner*, 216 F.3d 970 (2000) (en banc); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA"). When a defendant moves to dismiss and puts forward proof showing that plaintiff failed to exhaust and defendant did not inhibit his efforts to do so, the PLRA requires the Court to dismiss the unexhausted claims.[1] *See Turner v. Burnside*, 541 F.3d 1077, 108-83 (11th Cir. 2008) (describing the two-prong "facial" and "factual" evaluation of exhaustion as a "matter in abatement," as it is a precondition to suit, not an adjudication on the merits); *Harris*, 190

---

[1] Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id*. at 89-91 (citation omitted); *see also Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006) (proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005).

F.3d at 1285-86. Simply put, if an administrative remedy is "available," it *must* be exhausted. 42 U.S.C. § 1997e(a).

The Georgia Department of Corrections maintains an administrative grievance procedure that is available to all inmates, including plaintiff. Doc. 11-2 (Declaration of Chrystal Whiters, Grievance Coordinator at the Georgia Diagnostic and Classification Prison) at ¶ 5. Every inmate receives an oral explanation of this process and written instructions. *Id.* Under the grievance procedure, an inmate must file his formal grievance within ten calendar days of the day he knew, or should have known, of the facts giving rise to his grievance. *Id.* at ¶ 9. The Warden investigates the complaint, and issues a written statement summarizing his grant or denial of the complaint. *Id.* at ¶¶ 13. If the inmate receives a denial, he has seven calendar days to file his appeal from the Warden's decision. *Id.* at ¶ 15. An appealed decision is reviewed at the Central Office, and a written appeal decision sent to the inmate. *Id.* Both the original grievance and appeal process must be complied with to fully exhaust available administrative remedies. *Id.* at ¶¶ 7 & 8. Because an administrative grievance procedure was in place and available for Purvis' use, he was

4

required to file a grievance and fully exhaust all of his available administrative remedies *prior* to filing his Complaint. *See Johnson*, 418 F.3d at 1156.

Exhaustion of Purvis' administrative remedies is disputed here -- not just between the parties but also *within* Purvis' own filings. *See* doc. 1 at 3-4. Even taking his version of the facts as true, he contradicts himself, saying both that he was denied multiple oral requests for a grievance form to commence the process and that a pending appeal had not yet been decided by the time he filed his Complaint. *Id.* A review of his grievance history reveals, however, that while the grievance process was indeed available to him, plaintiff did not file any grievances from May 13, 2104 through his release on February 9, 2016. Doc. 11-2 at ¶¶ 17-19; *id.* at 30-31. There is no record of any original grievance (or appeal) pending while he was incarcerated. *Id.* (an October 2016 search of the grievance record via plaintiff's inmate identification number turned up no pending or resolved grievances or appeals).

Notably, Purvis has not opposed defendants' motion to dismiss for failure to exhaust, disputed their proof that he failed to exhaust, or offered any proof of his own that he indeed filed a grievance (*e.g.*,

5

receipt for a grievance or even a copy of the grievance itself, a document he had complete control over). *See* Local Rule 7.5 (failure to respond to a motion shall indicate that there is no opposition to it); doc. 11 at 16 (proof of service of copy of motion and accompanying exhibits on plaintiff at his post-release address). And prisoners who fail to timely file grievances (or appeals) have not met the PLRA's exhaustion requirement. *Woodford* 548 U.S. at 101; *Johnson*, 418 F.3d at 1157.

Even construing Purvis' arguments liberally to contend that any failure to exhaust was caused by those remedies' unavailability, *see* doc. 1 at 3; *see also Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1859 (2016) (prisoners need only exhaust those remedies which were available to them), plaintiff fails to demonstrate an exception to the PLRA's procedural bar. Three circumstances can render an administrative remedy, "although officially on the books," unavailable: (1) where the administrative procedure "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when administrative remedies are so confusing that they are "essentially 'unknowable'"; or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through

6

machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Here, Purvis contended that he asked a guard for a grievance form but the guard refused to give it to him. Doc. 1 at 3. On its own, that might be enough to raise a question of unavailability. But he also indicated that it *was* available to him, alleging that there was a prisoner grievance procedure in place, that he had "present[ed] the facts of [his] complaint to the appropriate grievance committee," and that he had "appeal[ed] any adverse decision to the highest level possible" but had not yet received a final decision. *Id.* at 3-4.

Given the internal contradiction of these statements, the Court must look to defendants' *unopposed* evidence that plaintiff never filed a grievance (or an appeal to an adverse decision on a grievance). *Turner*, 541 F.3d at 1082-83 (if conflicting facts leave a dispute as to whether plaintiff has exhausted, the Court does not need to take his version of the facts as true and may look beyond the complaint to make a factual finding on exhaustion); Local Rule 7.5. Even if a hurdle to exhaustion existed as Purvis claimed in his Complaint, he has shown no evidence -- or even cursorily rebutted defendants' evidence -- that it rose to the height of unavailability that the Supreme Court contemplated in *Ross*.

7

136 S.Ct. at 1859-60.

Defendants also move to dismiss based on the merits, but it is not necessary to reach that because plaintiff failed to fully exhaust his administrative remedies all the way through the written decision on an appeal from a denial *before* filing his Complaint. Accordingly, his federal claims are procedurally defaulted and must be **DISMISSED** without prejudice, regardless of merit. 42 U.S.C. § 1997e(a); *McDaniel v. Crosby,* 194 F. App'x 610, 613 (11th Cir. 2006) (even assuming the prisoner's claims had merit, "they could not be brought in federal court until he had sought relief through established prison procedures" because "satisfaction of the exhaustion requirement [i]s a precondition to the filing of his suit, and, thus, must have occurred *before* the suit was filed.").

## III. CONCLUSION

Because Christopher Purvis has failed to exhaust his administrative remedies, his complaint should be **DISMISSED** without prejudice.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C.

8

§ 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this  19th  day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA